MICHAEL V. BLANSFIELD ET AL., EXECUTORS (ESTATE OF IRVING E. PRIOR) *v.* BERNICE E. BANG ET AL.

SUPERIOR COURT      NEW HAVEN COUNTY      FILE NO. 22925
AT WATERBURY

Memorandum filed August 9, 1956.

*Harry M. Albert,* of Waterbury, for the plaintiffs.

*Carmody & Torrance, Upson & Secor* and *Traurig & Traurig,* all of Waterbury, for the defendants.

TROLAND, J. This is an action for the construction of the will of Irving E. Prior, who died at Water-

bury, Connecticut, on August 6, 1955. Mr. Prior left a holographic will dated June 3, 1954. Under our law the court is to seek and declare the intention of the testator as expressed in the will. This is to be determined from an examination of the will as a whole, including the ascertainment of the testamentary plan, in the light of the circumstances under which the will was executed. *Hartford-Connecticut Trust Co.* v. *Gowdy,* 141 Conn. 546, 550.

The circumstances under which the will was executed were as follows: Irving E. Prior was in his eighty-fourth year. Since November 30, 1950, Irving W. Pasternak had been his conservator. Mr. Prior was living in a house at 1422 West Main Street in Waterbury. His house was kept, and he was given constant nursing care and attention by, Bernice E. Bang, who had served him faithfully for a long time. Mr. Prior was acquainted with the work of St. Margaret's School in Waterbury, and favorably disposed toward the school. Mr. Prior owned a substantial tract of land in Waterbury which had been under subdivision and development over a period of years. This land included the house where he lived and a larger house adjoining. The value of his real estate holdings was approximately $64,000. At the time Mr. Pasternak was appointed conservator, Mr. Prior was in debt for a substantial sum, including taxes, and the conservator placed a mortgage on most of the real estate in the amount of $10,000 in order to pay such obligations. The mortgaged property included the house in which Mr. Prior lived and the adjoining larger house. The outstanding balance due on the mortgage was $8100. That part of Mr. Prior's real estate holdings not covered by the mortgage was worth approximately $20,000. Mr. Prior's personal property was of trifling value. Mr. Prior had been acquainted with the plaintiffs, Michael V. Blansfield and Irving W. Pasternak, for a number of

years. They had served him from time to time as attorneys and he was friendly and well disposed toward them. Mr. Prior's father and mother, brothers and sister were all dead. He had no nephews or nieces, uncles or aunts. His relatives were distant. He had no contacts with them, and except for a Christmas card from his first cousin, Mrs. King, in December of 1951, he had no correspondence with them. He was aware that he had relatives, but for him they lived in a twilight zone and he remembered them vaguely. They had little or no concern for him and he had little interest or affection for them. As a group, he was uncertain as to where they were or how to reach any of them.

Under the circumstances set forth above, Mr. Prior sat down to write his own will without the help of any lawyer and he remembered and provided for those who were close to him, who had served him well and in whom and in whose affairs he was interested. The will, as drafted, produces certain problems for the executors. The first paragraph of the will reads as follows: "To Bernice E. Bang, My Faithful and good Housekeeper and nurse, who has Given Constant Attention and day and night care and services, I Will: Title Free and House Clear of any indebtedness or claims the Small Shingled House and Land and Lot it now stands on on my premises (property) at 1422 West Main Street, Waterbury, Connecticut (on corner) with Equal rights to entering road. To have immediate possession of House." The second paragraph of said will reads as follows: "To St. Margaretts School, *Chase Park,* I will the the big House and the portion piece of land it stands on on my Premises at 1422 West Main Street, Waterbury, Connecticut; Garage and Land Directly in front of house (to road) included. Immediate possession of house." The sixth paragraph of said will reads as follows: "All rest

remaining Estate to be sold and returns divided equal among all living blood proven Heirs. After All Expenses and Bill are paid in full." The last or eighth paragraph of said will reads as follows: "The time limited for contacting Blood heirs to not exceed six (6) months. End of the 6th month any blood relatives not located will not be in this Will, Not included."

The parties have all agreed and stipulated orally in court with reference to the description of the lands devised in the first and second paragraphs of the will. The first question is as to whether the devisees in paragraphs one and two take their respective devises free from the burden of the outstanding mortgage thereon. After making the devises above referred to and a few small bequests, the testator provided that "[a]ll rest remaining Estate to be sold and returns divided equal among all living blood proven heirs. After All Expenses and Bill are paid in full." The law in Connecticut has been long established that a general direction in a will to pay the testator's debts, without words of restriction, must mean all debts, whether secured by mortgage or unsecured. *Bishop* v. *Howarth,* 59 Conn. 455, 465. The language creating the residuary estate "[a]fter All Expenses and Bill are paid in full" charges the residuary estate with the payment of all debts which the personal estate was insufficient to satisfy. *Turner* v. *Laird,* 68 Conn. 198, 200. There is no contrary intent expressed in the will.

The court finds that the intent of the testator as expressed in his will, and in the light of the circumstances under which it was written, was that Bernice E. Bang and St. Margaret's School were each to take their devises free and clear of all incumbrances.

The parties are advised that under the first paragraph of said will Bernice E. Bang takes the small

house and the land on which it stands free and clear of all the incumbrances and that it is the duty of the executors to sell the remaining unincumbered land to raise funds to clear said land so devised free of the mortgage to the Waterbury Trust Company, and that under the second paragraph of the will, St. Margaret's School takes the big house and the land on which it stands on West Main Street, Waterbury, and the land described in said paragraph free and clear of all incumbrances including the mortgage to the Waterbury Trust Company, which, as stated above, it is the duty of the executors to pay from the proceeds of the sale of the remaining unincumbered property. After the payment of the other small bequests in said will, there will undoubtedly remain a balance in the hands of the executors to be disposed of as provided in the sixth paragraph of the will.

At the death of Mr. Prior there were living his first cousin, Olive Prior King, and several second cousins. The testator provided, as set forth above, that after all expenses and bills are paid in full, the remaining estate is to be divided "equal among all living blood proven Heirs." If Mr. Prior intended to use the phrase "blood proven Heirs" in its technical and long-established legal sense, Olive Prior King is, of course, the only heir, and she would be entitled to the entire residuary estate. Mr. Prior was not a lawyer and he was not versed in the technical use of legal language. His use of the words "all living blood proven Heirs," in paragraph six is qualified by his use of the words "End of the 6th month any blood relatives not located will not be in this Will, Not included," in the eighth paragraph. "[A]ny blood relatives not located" does not seem to be a purely accidental choice of words. The court is of the opinion and finds that the intention of the testator was not to use the phrase "blood proven

Heirs" in its technical sense but that his scheme, plan and intention, as shown by the entire will taken in the light of the surrounding circumstances and with proper emphasis on the eighth paragraph of the will, was that at his death his then living blood relatives of whatever degree of relationship should participate in the bounty of his residuary estate as a class sharing equally per capita.

Judgment may enter advising the parties as above. The judgment file shall include the descriptions of the parcels devised to Bernice E. Bang and St. Margaret's School as agreed upon by all the parties and set forth in exhibits D and E.

Counsel fees and expenses are allowed to the parties appearing in amounts to be fixed after further conference with the court.